Harvey CARDENAS, Appellant,

v.

The STATE of Texas, Appellee.

Nos. B14–91–01301–CR,
B14–91–01352–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

June 10, 1993.

Rehearing Denied July 15, 1993.

Blanca Lopez, Houston, for appellant.

Michael S. McNeely, Anahuac, for appellee.

Before MURPHY, CANNON and MORSE, JJ.

## OPINION

CANNON, Justice.

### I. NATURE OF THE CASE

This is an appeal from bench trial convictions for aggravated possession of cocaine and for failure to pay the controlled substance tax. Appellant Cardenas complains that the search of his vehicle and seizure of cocaine was illegal and that his counsel was ineffective. We affirm.

### II. FACTS

#### A. State's Version

On an evening in February 1991, Officer Greg Fountain, a member of the Chambers County narcotics task force, was patrolling Interstate 10. He observed an eastbound Chevrolet Cavalier with Mississippi plates failing to stay in a single marked lane. He pulled the car over. The only occupant exited the car and appeared unusually nervous. The occupant identified himself by Texas driver's license as Harvey Cardenas. The license indicated a Houston address. Cardenas said he owned the car. He told Fountain that he had been staying with his brother in Houston for two weeks, but Fountain could see no luggage or clothes in the passenger compartment. Fountain smelled fresh paint emanating from the rear of the car but could see no evidence of exterior body work. He asked Cardenas if he could have a look in his car. Cardenas agreed. Fountain presented Cardenas with a consent-to-search form which he read to Cardenas and explained to him several times. Cardenas freely and voluntarily signed the form, which included permission to search the ."vehicle" including "containers and contents."

Fountain, concerned with his safety and noting that the weather was cool and sprinkly, asked Cardenas to sit in the rear of his patrol car. He told Cardenas that he

was not under arrest. The back of the patrol car was locked. Cardenas did not object.

Fountain proceeded to search Cardenas' car. When he opened the trunk, the smell of fresh paint became stronger. There was no luggage in the trunk. The spare tire was lying on its side in the trunk, bolted through its center onto the trunk's apparent floor. He found a can of spray paint and tube of weatherstripping. Fountain was familiar with the configuration of the Chevrolet Cavalier and knew that the spare tire is normally stored in a tire well recessed into the floor of the trunk. Underneath the car, on the underside of the trunk area, Fountain detected the shape of the tire well. The paint had been burned off in several places, indicating welding from the inside of the trunk. He unbolted and removed the tire and peeled back the carpeting. A metal plate was tack-welded over the opening of the tire well. The paint on the plate was a fresher color than the rest of the trunk. There was a smaller plate and tire mounting bracket tack-welded onto the center of the larger plate. Due to his experience as a narcotics officer, Fountain suspected a hidden compartment containing narcotics.

He placed Cardenas in custody, handcuffed him, and had the car towed to the police garage about fifteen miles away. Fountain testified that there was no emergency, danger, or immediate circumstance that prevented him from seeking a search warrant. Fountain brought Cardenas, handcuffed, to the garage. He told Cardenas that he was not under arrest. At the garage, Cardenas remained handcuffed and observed the continuation of the search.

Fountain looked down the hollow tube of the tire mounting bracket into the tire well where he saw brown paper. He used a tire tool to pop off the small plate and bracket to reveal a small hole in the center of a larger plate. He could see a brown paper bag. He could reach inside enough to feel the shape of the bag. He recognized the shape and feel of a one-kilo bag of cocaine. After Fountain tried unsuccessfully to remove the larger plate, a garage mechanic used an air chisel to break the tack-welds and remove it. The trunk, plates, bracket, and carpet suffered no permanent damage. Fountain removed the bag from the tire well. The substance inside the bag field-tested positive for cocaine. Fountain formally arrested Cardenas and read him his *Miranda* rights. The substance later tested out as approximately one kilogram of cocaine.

### B. Cardenas' Version

Cardenas testified through an interpreter. He had been visiting a girlfriend in Houston and was enroute to his other girlfriend in Mississippi. He kept clothes in both locations, explaining the absence of luggage. He had not crossed lane lines except to change lanes to allow Officer Fountain's car to enter the highway from the shoulder. Due to a language barrier, Cardenas had difficulty understanding Fountain, but understood him to ask if he could look in Cardenas' car. Cardenas agreed but did not understand that his permission extended to the trunk. Fountain did not read to him the consent-to-search form. Cardenas could not read English and so did not read the form himself. Cardenas signed what he thought was a traffic ticket. Fountain did not tell him that he did not have to sign the consent form. If Fountain had done so, he would not have signed it. Cardenas did not give Fountain permission to break the welds on the floor of the trunk. He could not object to the roadside search of the trunk because he was locked inside the police car. Cardenas was handcuffed for the trip to the garage. He did not object to the garage search because, "[H]e had me handcuffed in there. He just had me in there...."

He had loaned his car to a friend in Houston who had possession of the car for most of Cardenas' two-week stay. The trunk had not been modified since he bought the car, and he did not know that anything was concealed in the spare tire well. Cardenas had lived in the United States for over ten years.

## III. POINTS OF ERROR

### A. Point One—Scope of Consent Exceeded

In point of error one, Cardenas complains that the trial court erred in denying his motion to suppress the evidence seized during an illegal search of his car. This evidence included the one-kilo bag of cocaine. While Cardenas concedes that he voluntarily consented to a search, he argues that the search of the sealed tire well at the police garage exceeded the scope of that consent.

#### 1. The Law

The Fourth Amendment protects citizens against unreasonable searches and seizures. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9. A warrantless search or seizure is *per se* unreasonable, subject to a few well-defined and limited exceptions. *United States v. Karo*, 468 U.S. 705, 717, 104 S.Ct. 3296, 3304, 82 L.Ed.2d 530 (1984). The five basic exceptions are: (1) consent, (2) incident to a lawful arrest, (3) with probable cause to search but with exigent circumstances, (4) in hot pursuit, and (5) stop and frisk. *Kolb v. State*, 532 S.W.2d 87, 89 n. 1 (Tex.Crim.App.1976). Once a defendant shows that an arrest or search was without a warrant, the burden shifts to the State to show sufficient facts to justify the action. *Russell v. State*, 717 S.W.2d 7, 9 (Tex.Crim.App.1986).

A consent search is an exception to the warrant requirement. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2044, 36 L.Ed.2d 854 (1973). However, the scope of a consent search is limited by the terms of its authorization. *Walter v. United States*, 447 U.S. 649, 656, 100 S.Ct. 2395, 2401, 65 L.Ed.2d 410 (1980); *Montoya v. State*, 744 S.W.2d 15, 25 (Tex. Crim.App.1987), *cert. denied*, 487 U.S. 1227, 108 S.Ct. 2887, 101 L.Ed.2d 921 (1988). The actual consent given is determined by an objective standard. *Florida v. Jimeno*, —— U.S. ——, ——, 111 S.Ct. 1801, 1803–04, 114 L.Ed.2d 297 (1991). The standard is "objective reasonableness," i.e., what would the typical reasonable person have understood by the exchange between the officer and the suspect? *Id.*

When hearing a motion to suppress, the trial court is entitled to believe or disbelieve any or all of the testimony and evidence. *See Walker v. State*, 588 S.W.2d 920, 924 (Tex.Crim.App.1979). Therefore, we are not at liberty to disturb any finding that is supported by the record. *Green v. State*, 615 S.W.2d 700, 707 (Tex. Crim.App.1980), *cert. denied*, 454 U.S. 952, 102 S.Ct. 490, 70 L.Ed.2d 258 (1981). However, whether a search or seizure is reasonable under the Fourth Amendment is an issue of law that we review de novo. *Higbie v. State*, 780 S.W.2d 228, 230 (Tex.Crim. App.1989). Therefore, while we apply a clearly erroneous standard to the trial court's factual findings, we apply the "objective reasonableness" standard to the trial court's conclusion of law on the scope of Cardenas' consent. *See United States v. Ibarra*, 965 F.2d 1354, 1356 (5th Cir.1992).

Under the Texas exclusionary rule, we must suppress any evidence that we find the police obtained in violation of Cardenas' constitutional rights. TEX.CRIM.PROC.CODE ANN. art. 38.23 (Vernon Supp.1993).

#### 2. Analysis

The record does not include a written motion to suppress nor a statement of facts from any pre-trial motion to suppress hearing. However, we do have before us the statement of facts from the bench trial including Cardenas' objections to the admission of the seized evidence and an oral motion to suppress urged at the close of the trial. We find that Cardenas preserved error, and we consider his points of error on the record provided.

The issue raised by Cardenas' first point of error is whether it was objectively reasonable to interpret Cardenas' oral and written consent as authorizing the police to tow his car to a police garage and use a power-assisted tool to gain access to a secret compartment in the trunk. It is important for clarity of analysis to maintain focus on Cardenas' consent and its scope. Therefore, we will assume for now that the police did not have probable cause to search the car or arrest Cardenas. We

first decide the narrow question of whether Cardenas' consent alone was sufficient to justify the search and seizure.

### a. Initial Stop and Detention

■ Police concede that at no time did they seek a warrant to arrest Cardenas or search his car. In turn, Cardenas concedes that the initial stop of his car on the highway was not pretextual. He does not contest that Officer Fountain had at least the reasonable suspicion needed for an investigative stop. Officer Fountain saw Cardenas' car crossing lane lines and thereby had sufficient articulable, facts to suspect an intoxicated, sleepy, or otherwise impaired driver. *See Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979).

### b. Oral Consent

■ After asking a few questions and checking Cardenas' identification, Officer Fountain asked Cardenas if he minded if Fountain had "a look in his car." Fountain did not tell Cardenas what he was looking for, and so the scope of the search could not be defined by the object sought. *See Jimeno*, — U.S. at —, 111 S.Ct. at 1804. Therefore, we cannot ascribe to our objectively reasonable person an awareness that Cardenas knew that Officer Fountain would search wherever drugs or other targeted contraband might be found, including the concealed tire well. The scope of such a general consent to search is not limitless, but rather, "constrained by the bounds of reasonableness." *Ibarra*, 965 F.2d at 1358.

We hold that it was not objectively reasonable that Cardenas' oral consent to "a look in his car" would include authorization for the police to tow his car to a police garage or break into the concealed tire well. *See United States v. Garcia*, 897 F.2d 1413, 1419–20 (7th Cir.1990) (consent to "look" in truck did not authorize "inherently invasive" removal of door panels). However, Cardenas also signed a consent-to-search form.

### c. Written Consent-to-Search

### (1) Roadside Search

■ It was undisputed that Cardenas freely and voluntarily signed a consent-to-search form that authorized a search of his "vehicle ... including containers and contents." The police did not inform him of the object of the search, which would have helped to define the scope of the search. *See Jimeno*, — U.S. at —, 111 S.Ct. at 1804. However, it was objectively reasonable that "vehicle" included all the compartments with which cars are typically equipped such as the center console, glove compartment, trunk, and tire well. The "containers and contents" language reasonably covered such items as briefcases, boxes, luggage, cans, or bags that might be found within the car or its compartments. Locked compartments and containers have been held to be within the scope of general warrant and consent searches. *United States v. Gutierrez–Mederos*, 965 F.2d 800, 803–04 (9th Cir.1992), *cert. denied*, — U.S. ——, 113 S.Ct. 1315, 122 L.Ed.2d 702 (1993) (side panel compartment of hatchback); *United States v. Martinez*, 949 F.2d 1117, 1121 (11th Cir.1992) (locked trunk pried open); *United States v. Gonzalez*, 940 F.2d 1413, 1420 (11th Cir.1991), *cert. denied*, — U.S. ——, 112 S.Ct. 910, 116 L.Ed.2d 810 (1992) (briefcase); *United States v. Morris*, 647 F.2d 568, 572–73 (5th Cir.1981) (jewelry box); and *United States v. Milian–Rodriguez*, 759 F.2d 1558, 1563–64 (11th Cir.1985), *cert. denied*, 474 U.S. 845, 106 S.Ct. 135, 88 L.Ed.2d 112 (1985) (lock of closet door picked). We believe that the tire well, with its tack-welded lid, was equivalent to a locked compartment.

The present case is distinguishable from *State v. Wells*, 539 So.2d 464 (Fla.1989), *aff'd on other grounds*, 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990), where a general consent to search the trunk of a car was held not to authorize the breaking open of a locked suitcase. *Id.* at 467. First, Cardenas gave his consent to a search of his "vehicle" which reasonably included the compartments of the vehicle such as the tire well. The suitcase in *Wells* was not an integral component of the trunk

as was the tire well of Cardenas' car. Second, Cardenas' consent included authorization to search "containers and contents." This consent could reasonably impart authorization to search Cardenas' restricted-access tire well, should the tire well be thought of as a "container" *in* the vehicle rather than as a "compartment" *of* the vehicle.

Cardenas complains that, during the roadside search, he was locked in the police car and was unable to object or withdraw his consent. But Fountain testified that he asked Cardenas if he would sit in the police car, and Cardenas voluntarily did so. Cardenas did not attach any conditions or limitations to his consent regarding place of search, areas to be searched, duration, or intensity. Nor had he specified that he be able to personally observe the search. Although sitting in the back of a locked police car, Cardenas was not handcuffed. He was told that he was not under arrest. There was no evidence that Cardenas requested to be released from the police car or that he attempted to withdraw his consent.

The initial roadside search leading to the confirmation of the existence of the secret compartment merely entailed the peeling back of loosely-glued trunk carpet. There was no damage to the trunk or carpet. We hold that it was objectively reasonable that this initial roadside search was within the scope of Cardenas' general consent.

### (2) Tow and Garage Search

■ The police had Cardenas' consent to search the car but lacked the necessary tools to complete the search at the roadside. The police garage had the required tools. The proper tools would facilitate the search and minimize damage to the car. Cardenas' consent to search the car necessarily included inherent authorization for the police to temporarily seize the car for the duration of the search. We find that moving the car off the shoulder of the freeway to a safer location where facilities were available to efficiently complete the search was within that inherent consent. In *United States v. Kapperman,* 764 F.2d

786, 792 (11th Cir.1985), the court held that moving the location of a consensual car search or requiring defendant to ride in a patrol car to where the search would be conducted did not convert an investigatory stop into an arrest. Similarly, the police moving the location of Cardenas' car search and transporting him to the garage did not automatically convert an in-scope search into an out-of-scope search.

There was testimony that Officer Fountain told Cardenas that he suspected concealed narcotics and was towing the car to the police garage to find out what was in the secret compartment. Cardenas did not object to the tow. Also, Cardenas was present throughout the continuation of the search at the garage and never objected. The failure of Cardenas to object would confirm a reasonable person in the belief that the scope of Cardenas' consent was not being exceeded. *See United States v. Dewitt,* 946 F.2d 1497, 1501 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1233, 117 L.Ed.2d 467 (1992) and *United States v. Harris,* 928 F.2d 1113, 1118 (11th Cir. 1991). Cardenas argues that he did not object because he was handcuffed. The mere fact that Cardenas was handcuffed, or even under arrest, does not establish that he was rendered unable to limit or withdraw his consent. *United States v. Chaidez,* 906 F.2d 377, 382 (8th Cir.1990). There was no evidence of any physical coercion, duress, offered promises, or other means of persuasion by the police. Cardenas was free to voice an objection to the scope of the search at any time.

Another important consideration in determining whether Cardenas' consent was exceeded is the extent of the physical damage to the car resulting from the police search techniques.

This case is distinguishable from cases holding that a general consent to search does not include structural demolition of property. Here, there was no damage to the basic structural assembly of Cardenas' car. Rather, the police merely removed an artificial barrier to a standard compartment of the car, the tire well. *Cf. State v. Koucoules,* 343 A.2d 860, 867 (Me.1974)

(general consent to search house does not include tearing down walls); *United States v. Strickland*, 902 F.2d 937, 942 (11th Cir. 1990) (general consent does not authorize slashing open a spare tire); and *Garcia*, 897 F.2d at 1419–20 (consent to look inside truck for drugs or weapons did not authorize removal of door panels).

The Fifth Circuit recently considered a case closely analogous to the case at bar. In *United States v. Ibarra*, 965 F.2d 1354 (5th Cir.1992) (en banc) (court evenly divided), police obtained an oral consent to search a house from a houseguest. The guest refused to sign a consent-to-search form that was couched in the broadest of terms. The police told the guest of their investigation into money laundering and drug trafficking. They found an attic whose entrance was sealed with boards and used a sledge hammer to dislodge the boards. In the attic they found nearly $1,000,000 in cash, ledgers, and a money-counting machine. The District Court below had expressly found that the police engaged in "structural demolition of the premises" and that the police could not reasonably have interpreted the guest's consent to include a "structural dismantling of the secured closet ceiling/attic floor by use of a sledge hammering technique." The District Court suppressed the evidence found in the attic. *See id.* at 1355.

A panel of the Fifth Circuit reversed the District Court and held that the consent to search the house included the attic and that the police merely removed a barrier blocking a visible, preexisting passageway. *United States v. Ibarra*, 948 F.2d 903, 906 (5th Cir.1991). However, the court granted an *en banc* rehearing.

The full court applied the *Jimeno* objective reasonableness standard. *Jimeno*, —— U.S. at —— —— , 111 S.Ct. at 1803–04; *Ibarra*, 965 F.2d at 1355. Specifically the court considered whether a reasonable officer would have understood the oral consent to search the house by an invited guest to include consent to forcibly enter a part of the house that had been securely sealed. The court was equally divided, and the

District Court's holding was therefore sustained as a matter of law.

The half of the court that would have affirmed the District Court (and found that the search was out-of-scope) relied heavily on deference to the trial court's fact findings. This half refused to hold clearly erroneous the District Court's finding that the police actions amounted to "structural demolition." The court asserted that a reviewing court is not entitled to reverse a finding of fact merely because it would have decided the matter differently. *Ibarra*, 965 F.2d at 1356. The person giving consent told the officers that he did not own the house but was only a guest. When asked by the police whether they could search the house and garage, he answered, "That would be all right." However, he refused to sign a consent-to-search form. The court concluded that a reasonable person could not construe that simple consent to authorize the breaking of the boards securing the entrance to the attic. *Id.* at 1357. The court discounted the guest's failure to object since he was alone and heavily outnumbered by police officers who had already found incriminating evidence. *Id.* at 1358 n. 6.

The reversing half of the court (believing the search to be in-scope) would have found clearly erroneous the trial court's finding of fact that the police disturbed the structural integrity of the house. *Id.* at 1360. This half points out that the house was built with an attic space and that an access to this space was located in the ceiling. The police did not alter the frame of the house. Rather, they removed a barrier that blocked a visible access to the attic. *Id.* The guest could have limited the extent of the search but did not. *Id.* at 1361. This half would have found that an objective onlooker would have considered the guest's consent to extend to all integral parts of the house where evidence of money laundering or drug trafficking could be found. *Id.* The guest's consent reasonably extended to all compartments of the house. "That entry to one chamber was difficult does not alter this conclusion." *Id.* This half of the court would have

reversed the trial court's suppression of the evidence.

The opinions of the equally-divided *Ibarra* court suggest a key factor in determining whether the scope of a general consent to search a vehicle has been exceeded. That is whether the actions of the police destroyed or significantly damaged a structural component of the vehicle. The tire well of Cardenas' car had been artificially covered with a metal plate analogous to the securing of the attic by boards in *Ibarra*. Since the trial court in the present case decided not to suppress, we can ascribe to the trial court the implied finding that the police did nothing more than clear the access to the vehicle's tire well. Such a finding is supported by the evidence. Indeed, there was testimony that the metal cover plate was secured with only four one-inch tack welds and that there was no permanent damage to the trunk, plate, or carpet.

This even split in the Fifth Circuit on the analogous *Ibarra* case suggests the closeness of our scope-of-consent issue. However, there are several differences between *Ibarra* and the present case to tip the balance in favor of our holding that the search of Cardenas' car was within the scope of his consent. First, in *Ibarra*, the consenter was a mere houseguest, not the owner as was Cardenas. Second, in *Ibarra*, the consenter denied that he had the authority to consent to a broad-scope search of the owner's house. Cardenas made no such denial. Third, in *Ibarra*, the consenter adamantly refused to sign a written broad-scope consent. Here, Cardenas freely and voluntarily did so. Forth, in *Ibarra*, police used a dramatically invasive search technique, using a sledgehammer to break away boards covering access to the attic. Here, police used appropriate tools to break loose a few tack welds and minimize collateral damage to the car structure.

Finally, in *Ibarra*, the appeals court was presented with an express factual finding by the trial court that the police had "structurally demolished" the attic floor/closet ceiling and a conclusion of law that that level of invasiveness exceeded the scope of the consent given. In contrast, in the pres-

ent case, the trial court did not suppress the seized evidence, and the record supports an implied finding that structural demolition did not occur. One half of the *Ibarra* court would have held that the District Court's finding of structural demolition was clearly erroneous. The other half conceded that there were equally plausible interpretations of the police actions and merely deferred to the trial court's assessment. Our holding that the trial court's implied finding of no structural demolition was not clearly erroneous would be consistent with both halves of the *Ibarra* court— the half that would agree with the trial court's finding and the half that would defer to the trial court's decisions on fact questions.

We find that the trial court's implied finding that there was no structural demolition of the trunk was not clearly erroneous. We further find that a reasonable, objective observer would have concluded that Cardenas' written consent included all the normal structural compartments of his car. Barring a withdrawal of consent by Cardenas, it was objectively reasonable for the police to believe that they had consensual authority to tow the car to a garage where the facilities, lighting, and tools would facilitate the search and minimize damage to the car. Cardenas could have withdrawn his consent and stopped the search at any time before probable cause was established, but he did not.

On similar facts to the case at bar, the Third and Fifth Circuits have each upheld the consent search of a secret compartment in a car trunk. In *United States v. Velasquez*, 885 F.2d 1076 (3rd Cir.1989), *cert. denied*, 494 U.S. 1017, 110 S.Ct. 1321, 108 L.Ed.2d 497 (1990), Delaware police stopped a car enroute from Miami to New York for speeding on Interstate 95. The police officer asked the driver to sit in the patrol car because it was quieter and warmer. There the driver signed a written consent-to-search form. Police quickly detected a secret compartment in the trunk but did not have the tools or facilities to gain entrance to the compartment. *Id.* at 1078. Police handcuffed the driver and another passenger and took them and the

car to a police garage. *Id.* There police used a crowbar to force open a six-inch by ten-inch locked, hinged door. *Id.* at 1979. In *United States v. Olivier–Becerril,* 861 F.2d 424 (5th Cir.1988), the court upheld a consent search of a secret compartment in a concealed tire well. The driver gave a Texas border agent permission to look in the trunk. The agent noticed that the spare tire sat on the floor of the trunk, not in the tire well. He smelled Bondo, a plastic material used in body repairs. The trunk carpet was glued over the entry to the tire well, and the agent punched a hole in the carpet. Out of the hole puffed a white powder, which proved to be cocaine. *Id.* at 425.

We find that the search of Cardenas' car on the roadside and at the garage was within the scope of Cardenas' consent. We overrule point one.

### B. Point Two—No Probable Cause

In point two, Cardenas complains that the trial court erred in denying his motion to suppress because Officer Fountain did not have probable cause to believe that the car concealed contraband. He argues, therefore, that Fountain did not have the right to exceed Cardenas limited-scope consent by towing the car to the police garage and conducting an invasive search.

We have found that the search of Cardenas' car at the police garage was within the scope of Cardenas' consent. Therefore, Fountain did not need probable cause. Nevertheless, we find that probable cause independently justified the search. We may sustain a trial judge's ruling on a motion to suppress upon any ground which we view as reasonably supported by all the circumstances in the trial record. *Nickerson v. State,* 645 S.W.2d 888, 891 (Tex.App.—Dallas 1983), *aff'd,* 660 S.W.2d 825 (1983).

We reiterate that Cardenas does not contest the initial stop of his car for his failing to stay inside marked lane lines. He also concedes that a limited roadside search was within the scope of his consent.

Since police searched Cardenas' car without a warrant, the search must be justified under one of the exceptions to the warrant requirement. *Kolb,* 532 S.W.2d at 89 n. 1. One exception is probable cause plus exigent circumstances that make obtaining a warrant impractical. *Id.* "[Probable cause] has been found to exist where the facts and circumstances within the knowledge of the officer on the scene and of which he has reasonably trustworthy information would lead a man of reasonable caution and prudence to believe that he will find the instrumentality of a crime or evidence pertaining to a crime." *Barber v. State,* 611 S.W.2d 67, 68 (Tex.Crim.App. 1981). Probable cause is to be determined from the "totality of the circumstances." *Amores v. State,* 816 S.W.2d 407, 413 (Tex. Crim.App.1991). The mobility of an automobile is an exigent circumstance justifying a probable cause search of a car stopped on a highway. *Chambers v. Maroney,* 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970). If police have probable cause to search a car at the scene of a stop, they may do so later at the police station without first obtaining a warrant. *Texas v. White,* 423 U.S. 67, 68, 96 S.Ct. 304, 305, 46 L.Ed.2d 209 (1975); *Gandy v. State,* 835 S.W.2d 238, 243 (Tex.App.—Houston [1st Dist.] 1992, no pet.); *Miller v. State,* 815 S.W.2d 805, 811 (Tex.App.—Austin 1991, pet. ref'd).

Whether a search or seizure is reasonable under the Fourth Amendment depends on the facts and circumstances of each case. *Taylor v. State,* 421 S.W.2d 403, 406 (Tex.Crim.App.1967), *cert. denied,* 393 U.S. 916, 89 S.Ct. 241, 21 L.Ed.2d 201 (1968). We now review the facts and circumstances known to Officer Fountain and assess whether a reasonably cautious and prudent person with Fountain's training and experience would have expected to find the instrumentality of a crime or evidence pertaining to a crime in the secret compartment.

(1) Cardenas was travelling east on a main east-west interstate highway. The car had Mississippi plates, but Cardenas held a Texas drivers license listing a Texas address.

(2) Cardenas appeared *unusually* nervous. He stated that he had been staying with his brother in Houston for two weeks, but the car contained no luggage or packed clothes.

(3) Cardenas stated that he was the owner of the car. There was evidence of a very recent modification to the trunk, i.e., the smell of fresh paint, a can of spray paint, and tube of weatherstripping.

(4) Officer Fountain was familiar with the normal configuration of the Chevrolet Cavalier trunk. There was clear evidence of a secret compartment, i.e., burned underside paint from welding, tire displaced from tire well, and a freshly-painted metal plate over the opening into the tire well.

(5) The secret compartment was sealed suggesting that something was currently inside.

(6) It is common knowledge that smugglers for centuries have used secret compartments in their unlawful enterprises.

(7) Fountain was assigned to a narcotics task force. Based on his training and experience, he was capable of drawing inferences from facts, that would elude a layman. *See United States v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981).

(8) The stop of Cardenas was not based on an informant's tip. No drugs or paraphernalia were found prior to the search of the secret compartment at the garage. No drug dog was present to alert on the trunk. There was no odor of drugs.

■ "[Probable cause analysis] does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as fact-finders are permitted to do the same—and so are law enforcement officers." *Illinois v. Gates,* 462 U.S. 213, 231–32, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983), quoting *Cortez, supra.* Probable cause should be based on the sum total and synthesis of what police have heard, know and observe as trained officers and applied in a flexible, common-sense manner.

*Strickland,* 902 F.2d at 942–43; *United States v. Benevento,* 836 F.2d 60, 67 (2nd Cir.1987), *cert. denied,* 486 U.S. 1043, 108 S.Ct. 2035, 100 L.Ed.2d 620 (1988).

■ Considering the relevant facts and circumstances, we find that a reasonably cautious and prudent police officer with Fountain's training and experience could have concluded that probable cause existed that the secret compartment in Cardenas' trunk contained contraband. *See United States v. Price,* 869 F.2d 801, 804 (5th Cir.1989) (once agents discovered secret compartment, they had probable cause to search the compartment itself) and *Strickland,* 902 F.2d at 939, 943 (slashing open of spare tire justified by probable cause when police observed unusual size, make, placement, and cover of tire).

Cardenas cites *Daniels v. State,* 718 S.W.2d 702, 707 (Tex.Crim.App.1986), *cert. denied,* 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 252 (1986), for the proposition that mere nervousness does not amount to probable cause. We agree. But here Cardenas was *"unusually* nervous." Moreover, probable cause does not depend here on mere nervousness but on the totality of facts and circumstances.

Cardenas points out that Officer Fountain had found no drugs of any kind in the car or on the person of Cardenas before Fountain towed the car to the police garage. But "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Gates,* 462 U.S. at 243–44 n. 13, 103 S.Ct. at 2335 n. 13. "In making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." *Id.*

Cardenas discounts the significance of the secret compartment, using Officer Fountain's own testimony:

[PROSECUTOR]: Hidden compartment, what did that tell you in your experience?

[FOUNTAIN]: That something was in there that usually wouldn't be in that place.

[PROSECUTOR]: It is unusual for a narcotic trafficker to make secret compartments or some compartments like this to cover their—

[FOUNTAIN]: Yes, sir.

Cardenas argues that, since Fountain thought it unusual for drug traffickers to use secret compartments, the concealed tire well in Cardenas' trunk could not have given rise to probable cause that the compartment contained contraband.

We first reply that Fountain's testimony is subject to an alternative reading. Contrary to Cardenas' interpretation, the trial court could have found that Fountain meant that it was unusual for a drug trafficker to use a secret compartment of the sophistication and craftsmanship of Cardenas' concealed tire well. Second, Fountain did testify that he believed that something was in the compartment that would not ordinarily be there. He also testified that on the way to the police garage he told Cardenas that he suspected that narcotics were hidden in the tire well.

Cardenas also points out that Officer Fountain admitted that there was no exigent circumstance that would have precluded him from obtaining a search warrant. However, probable cause is assessed by an objective standard, and our analysis is not confined to the subjective statements of the police officers. *Nickerson,* 645 S.W.2d at 891.

In sum, we find that the police had probable cause to search Cardenas' car at the roadside and at the garage, and that they could do so without a warrant. We limit our opinion to the facts of this case. We express no opinion on whether probable cause would have arisen if police had discovered a locked compartment or container that had not been as purposefully designed and secreted as Cardenas' tire well. We overrule point two.

### C. Point Three—Illegal Arrest

In point three, Cardenas complains that the trial court erred in denying his motion to suppress because the cocaine was seized as the result of an illegal arrest.

We found under point one that the search of Cardenas' car was within the scope of his consent. It was undisputed that Cardenas freely and voluntarily signed a consent-to-search form during a legal stop. We also found that Cardenas being handcuffed and taken to the police garage did not preclude him from voicing his objection to the search or withdrawing his consent. *See Feather v. State,* 169 Tex.Crim. 334, 333 S.W.2d 851, 853 (1960) (consent to search not insufficient because given while consenter under arrest). Therefore Cardenas' consent was not the fruit of his arrest. Point of error three is moot. Nevertheless, we find that the detention of Cardenas was a legal arrest.

Cardenas argues that an individual is illegally arrested when he is seized and taken to a police station without probable cause. *Dunaway v. New York,* 442 U.S. 200, 212–13, 99 S.Ct. 2248, 2257, 60 L.Ed.2d 824 (1979). Cardenas did not consent to being handcuffed, locked in the back of the patrol car, and taken to the police station garage. Cardenas asserts that, since he was present under illegal arrest while his car was searched at the police station, the search was the fruit of an illegal arrest. *See Daniels,* 718 S.W.2d at 707.

"Probable cause to arrest exists when the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information would warrant a reasonable and prudent person in believing that a particular person has committed or is committing a crime." *Lewis v. State,* 598 S.W.2d 280, 284 (Tex.Crim. App.1980). Probable cause is to be determined from the "totality of the circumstances." *Amores,* 816 S.W.2d at 413. "A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view." TEX.CODE CRIM.PROC.ANN. art. 14.01(b) (Vernon 1977).

Probable cause to search and probable cause to arrest are not mutually exclusive. The facts supplying probable cause to search can also furnish probable cause to

arrest. *See Jones v. State,* 493 S.W.2d 933, 935 n. 3 (Tex.Crim.App.1973). We have found that the police had probable cause to believe that contraband was present in the secret compartment of Cardenas' car. Concurrently, they would have had probable cause that Cardenas was committing the offense of possession of contraband. Therefore, police had probable cause and statutory authorization to arrest Cardenas without a warrant. On the facts of this case, his arrest was legal, and we overrule point three.

### D. Point Four—Ineffective Assistance of Counsel

In point of error four, Cardenas complains that his trial counsel was ineffective in failing to properly object to the admission of the illegally seized cocaine.

Cardenas fails to identify any instance where his counsel should have objected but did not. In fact, under point of error one, he asserted that counsel had properly objected and preserved error. We overrule point four.

### IV. CONCLUSION

Finding no reversible error, we affirm the judgment below.

MORSE, J., not participating.