Elias GONZALEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–91–670–CR.

Court of Appeals of Texas,
Corpus Christi.

Dec. 29, 1993.

Charles Cecil Starcher, Corpus Christi, for appellant.

Carlos Valdez, Dist. Atty., James D. Rosenkild, Asst. Dist. Atty., Corpus Christi, for appellee.

Before SEERDEN, C.J., and GILBERTO HINOJOSA and FEDERICO G. HINOJOSA, JJ.

### OPINION

GILBERTO HINOJOSA, Justice.

A jury convicted appellant, Elias Gonzalez, of burglary of a vehicle, with one enhancement count. The jury sentenced appellant to thirteen years' confinement in the Institutional Division of the Texas Department of Criminal Justice and assessed a $5,000 fine. We reverse and remand.

In his second point of error, appellant argues that the trial court abused its discretion in denying his motion to suppress evidence

discovered pursuant to an unreasonable search of his automobile. On January 25, 1991, Jesse Benavidez and other boxers were scheduled to fight at the Memorial Coliseum on Shoreline Drive. The parking lots around the coliseum were full. It was dark, but the parking lots were lighted. Two uniformed police officers, Sergeants Martin Tamez and Ralph C. Lee, Jr., had been assigned to watch for auto burglaries in the parking lots surrounding the coliseum. They testified that they arrived on duty that night at either 5:30 or 6:30 p.m., whenever the boxing matches began. One officer watched the parking lots on the north side of the coliseum, and the other officer watched the parking lots on the south side of the coliseum.

Appellant and Paulo Gonzalez (unrelated to appellant) arrived late to the boxing events. Appellant, who was driving, had to park far from the coliseum because the parking lot was "jam packed." Appellant told Paulo to run inside to check and see if they had missed the Benavidez fight. Paulo exited the passenger side of the vehicle, walked a few steps, then turned around and reentered the car. He suggested to appellant that they should drive by the front of the coliseum so that he could more easily run inside and check on the status of the fight. Appellant put the car in reverse, but Sergeant Tamez detained them before they pulled out of the parking space.

Sergeant Tamez testified that appellant's car caught his attention because it was driving slowly through the parking lot. He testified that the car pulled into a parking space, and, with the engine still running, the passenger (Paulo Gonzalez) got out and "looked around suspiciously." The passenger got back in the car ostensibly when he saw a pedestrian nearby. Sergeant Tamez said that the passenger got out of the car a second time, "looked around suspiciously," and got back in the car ostensibly when he saw the officer. As Sergeant Tamez approached the car, the reverse lights came on. Sergeant Tamez detained the car and called Sergeant Lee for back up.

Sergeant Tamez asked appellant to exit the automobile and asked him for identification. Appellant testified that when he asked Sergeant Tamez what he had done wrong, the officer first ignored him, then told him that he looked suspicious. Upon inquiry, appellant gave Sergeant Tamez the false name "Robert Sanchez" and told the officer that he did not have identification. Appellant subsequently testified that he gave a false name because he had several outstanding traffic warrants. Appellant testified that Sergeant Tamez asked whether the car belonged to him, to which appellant replied that it did.

Appellant granted Sergeant Tamez' request to search his automobile. The object of the search was disputed at trial. Appellant testified that Sergeant Tamez asked permission to retrieve the automobile registration from the glove box. However, Sergeant Tamez testified that he asked appellant for permission to search appellant's car for identification. Thus, either the automobile registration or appellants identification were the subject of the search. Appellant did not give his keys to the officer. Sergeant Tamez did not inform appellant that he could refuse to consent to a search, nor did appellant sign a consent to search form. Sergeant Tamez testified that if he were going to search the trunk of appellant's car he would have requested "special permission."

Just before Sergeant Tamez requested permission to search appellant's car, Sergeant Lee arrived and was standing near the rear of the vehicle with Paulo, appellant's passenger. Paulo testified that, when he realized the officers were going to search them, he tossed the key to appellant's trunk on the ground beneath the car. He said that the key had been in his pocket since earlier that evening. Sergeant Lee did not see Paulo toss the key to the ground. Eventually, however, Sergeant Lee noticed the key on the ground and picked it up. Sergeant Lee never testified that he thought either appellant or Paulo had attempted to conceal the key by throwing it away. He only testified that, while Sergeant Tamez searched appellant's car, he saw the key on the ground, picked it up, and used it to open appellant's trunk without asking permission.

When Sergeant Lee opened the trunk, Paulo attempted to flee, but appellant did

not. Sergeant Lee caught Paulo and brought him back to appellant's car. The trunk contained stolen goods which were introduced as evidence against appellant. During the motion to suppress hearing, Paulo testified that he had stolen the items from another vehicle when he had borrowed appellant's car. He said he had removed the trunk key from appellant's key ring before he returned the car to appellant. He also testified he did not tell appellant what he had done.

The State argues on appeal that appellant's consent to search his automobile extended to the trunk. Appellant disagrees. The issue we must address is whether Sergeant Lee's search of appellant's trunk was within the scope of consent given to Sergeant Tamez.

The Fourth Amendment protects citizens against unreasonable searches and seizures. U.S. CONST.AMEND. IV; TEX. CONST. art. I, § 9. With a few exceptions, one of which is consent, a warrantless search is *per se* unreasonable. *United States v. Karo,* 468 U.S. 705, 717, 104 S.Ct. 3296, 3304, 82 L.Ed.2d 530 (1984); *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973); *Kolb v. State,* 532 S.W.2d 87, 89 (Tex.Crim.App.1976); *Cardenas v. State,* 857 S.W.2d 707, 710 (Tex.App.— Houston [14th Dist.] 1993, pet. ref'd). Once an accused shows that a search was executed without a warrant, the burden shifts to the State to show sufficient facts to justify the action. *Russell v. State,* 717 S.W.2d 7, 9 (Tex.Crim.App.1986). This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority. *Kolb,* 532 S.W.2d at 90.

The scope of a consent search is limited by the terms of its authorization. *Cardenas,* 857 S.W.2d at 710 (citing *Montoya v. State,* 744 S.W.2d 15, 25 (Tex.Crim.App. 1987), *cert. denied,* 487 U.S. 1227, 108 S.Ct. 2887, 101 L.Ed.2d 921 (1988)). "The scope of a search is generally defined by its expressed object." *Florida v. Jimeno,* 500 U.S. 248, ——, 111 S.Ct. 1801, 1804, 114 L.Ed.2d 297 (1991). The prosecution must show that the consent given was positive and unequivocal.

*Kolb,* 532 S.W.2d at 90. In most cases in which an officer has searched the trunk of an automobile without a warrant or probable cause, the officer has requested specific permission to search the trunk. *See Meeks v. State,* 692 S.W.2d 504, 507 (Tex.Crim.App. 1985) (specific oral consent to search trunk); *Williams v. State,* 621 S.W.2d 609, 611 (Tex. Crim.App.1981) (specific oral consent to search trunk); *Pinkston v. State,* 501 S.W.2d 317, 318 (Tex.Crim.App.1973) (general consent to search and handed keys to officer).

Pursuant to the Fourth Amendment to the United States Constitution, Article 1, § 9 of the Texas Constitution and TEX.CODE CRIM. PROC.ANN. art. 38.23(a), no evidence obtained by an officer in violation of the Constitution or laws of the United States or the State of Texas shall be admitted into evidence against the accused during the trial of any criminal case. TEX.CODE CRIM.PROC.ANN. art. 38.23 (Vernon Supp.1993); *Cardenas,* 857 S.W.2d at 710; *Flores v. State,* 824 S.W.2d 704, 705 (Tex.App.—Corpus Christi 1992, pet. ref'd).

We are not at liberty to disturb any finding made by the trial court during a hearing on a motion to suppress if the finding is supported by the record, because the trial court is entitled to believe or disbelieve any or all of the testimony and evidence. *Cardenas,* 857 S.W.2d at 710 (citing *Green v. State,* 615 S.W.2d 700, 707 (Tex.Crim.App. 1980); *Walker v. State,* 588 S.W.2d 920, 924 (Tex.Crim.App.1979)). However, whether a search or seizure is reasonable under the Fourth Amendment is an issue of law that we review de novo. *Cardenas,* 857 S.W.2d at 710 (citing *Higbie v. State,* 780 S.W.2d 228, 230 (Tex.Crim.App.1989)). Accordingly, we apply the clearly erroneous standard to the trial court's factual findings and the "objective reasonableness" standard to the trial court's conclusion of law on the scope of a defendant's consent. *Cardenas,* 857 S.W.2d at 710 (citing *United States v. Ibarra,* 965 F.2d 1354, 1356 (5th Cir.1992)).

Turning to the facts of this case, the burden was on the State to show the reasonableness of the search of appellant's trunk. The object of Sergeant Tamez' search was either appellant's identification or the vehicle registration in the glove box, depending on which

witness was truthful at the suppression hearing. Whichever item was the object of Sergeant Tamez' search, we believe that an objectively reasonable person would not perceive that the scope of appellant's consent to search for identification or registration extended to the trunk of his car. In fact, Sergeant Tamez testified that he intended to ask specific permission to search appellant's trunk. However, before Sergeant Tamez could request specific permission to search appellant's trunk, Sergeant Lee had opened the trunk with the key he found on the ground.

Appellant's consent was not limitless, but rather "constrained by the bounds of reasonableness." *Cardenas,* 857 S.W.2d at 711 (quoting *Ibarra,* 965 F.2d at 1358). Appellant had only given Sergeant Tamez consent to search for identification or registration. He did not give Sergeant Tamez the keys to his car, nor did he otherwise voluntarily indicate that Sergeant Tamez could search the trunk of his car. Accordingly, we do not believe that Sergeant Lee acted reasonably when he searched appellant's trunk with a key he discovered on the ground.

This case is similar to *Barber v. State,* 611 S.W.2d 67 (Tex.Crim.App.1981). There, the defendant, who had been arrested for an outstanding traffic warrant, told the arresting officer, who had asked permission to search the trunk of his car, that he had lost the key to the trunk. The officer acquired the defendant's consent to search the passenger compartment, then found a key taped under the car butler. Without requesting further consent, the officer opened the trunk of the car with the key that he had found. The trunk of the car contained stolen goods which were used in evidence against the defendant. In reversing the judgment, the court stated, "no positive and unequivocal consent to search the trunk was given." *Id.* at 69. We believe that *Barber* controls the outcome of the case before us because, in both cases, the officers had permission to search the car, found keys without the defendants' knowledge, and used the keys to open the car trunks.

We hold that it was not objectively reasonable that appellant's consent to search for identification or registration extended to use a key found on the ground to search the trunk of his car. Accordingly, the stolen goods found in appellant's trunk and introduced into evidence against appellant were the "fruit of the poisonous tree." The trial court, therefore, abused its discretion in failing to exclude the stolen goods from evidence. The remedy imposed for an unconstitutional search, intended to deter police officers from depriving citizens of their Fourth Amendment rights to be free from unreasonable searches and seizures, is the exclusionary rule. Appellant's second point of error is sustained.

■ Appellant's third point of error challenges the sufficiency of the evidence to support the jury's finding of guilt. A challenge to the sufficiency of the evidence to sustain a conviction must be considered before disposing of a case even though reversal may be based on another ground. *Selman v. State,* 663 S.W.2d 838, 840 (Tex.Crim.App. 1984). If we were to sustain this third point of error, the only remedy would be to reverse the trial court's judgment and order that the trial court acquit appellant of the charges against him. *Herbert v. State,* 827 S.W.2d 507, 509 (Tex.App.—Houston [1st Dist.] 1992, no pet.); *McKinney v. State,* 825 S.W.2d 238, 240 (Tex.App.—Fort Worth 1992, pet. ref'd). Conversely, the remedy for sustaining appellant's second point of error is to remand to the trial court for a new trial consistent with our holding that the officers' search was unreasonable and that the fruits of that search should have been suppressed on appellant's motion. *See, e.g., Montano v. State,* 843 S.W.2d 579, 583 (Tex.Crim.App. 1992); *Nieto v. State,* 857 S.W.2d 149, 153 (Tex.App.—Corpus Christi 1993, no pet.). Whether to acquit appellant is a question necessary to the final disposition of this appeal. TEX.R.APP.P. 90(a).

A reviewing court addressing the sufficiency of the evidence must determine whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Vuong v. State,* 830 S.W.2d 929, 933 (Tex. Crim.App.1992). In assessing the sufficiency

of the evidence to support a conviction, a reviewing court must consider all evidence which the jury considered. *Johnson v. State,* 871 S.W.2d 183 (Tex.Crim.App.1993) (quoting *Thomas v. State,* 753 S.W.2d 688, 695 (Tex. Crim.App.1988)).

In addition to the facts enunciated with respect to appellant's second point of error, the following events occurred on the evening of appellant's arrest. At 7:45 p.m. on the same evening as appellant's arrest, Richard Beall and his girlfriend parked Beall's truck in the Spohn Hospital parking lot off Shoreline Drive. Beall testified that he locked the truck, looked back from the hospital entrance, and saw no one near his truck. When Beall and his girlfriend returned to his truck at 8:15, they found that the truck was unlocked and that several items were missing, including Beall's radar detector and his girlfriend's garment bag and purse.

Paulo Gonzalez, appellant's friend, testified that he and appellant were at appellant's father's apartment behind Ray High School on the evening of the incident in question. Gonzalez borrowed appellant's car from 7:30 to 7:45 p.m. He told appellant he was going to the store, but really intended to purchase some cocaine at a house near the Holiday Inn on Shoreline Drive. Gonzalez testified that he passed Spohn Hospital on the way to his friend's house, saw Beall's truck and decided to burglarize it. Using the brown gloves and vice grips the officers subsequently found in appellant's car, Gonzalez broke into Beall's truck. He took a purse, a bag and a radar detector. He testified that the whole process took him about three minutes. Gonzalez testified that he put the stolen goods in appellant's trunk, took the key to appellant's trunk off its key ring, and put it in his pocket. He said that, instead of going to get the cocaine, he returned to appellant's father's apartment because he had already been gone ten to fifteen minutes. He said he got back to appellant's father's apartment at approximately 8:15 p.m. Appellant and Gonzalez then went to the coliseum, and the events associated with appellant's second point of error occurred.

The jury convicted appellant of burglary of a vehicle. His indictment charged that ap-pellant, "with the intent to commit theft, intentionally and knowingly enter[ed] the passenger compartment of a vehicle owned by Richard Beall without his effective consent." The jury was free to disbelieve Paulo and conclude that appellant was in fact with Paulo when Beall's truck was burglarized. The stolen goods and the tools used to commit the crime were found in appellant's car. Viewing this evidence in the light most favorable to the verdict, we hold that a rational trier of fact could have found beyond a reasonable doubt that appellant entered Beall's truck and stole the goods subsequently found in his car trunk. *Vuong,* 830 S.W.2d at 933. Appellant's third point of error is overruled.

Appellant's first point of error will not be addressed because it is not necessary for the disposition of this appeal. TEX.R.APP.P. 90(a). The judgment of the trial court is REVERSED and REMANDED for proceedings consistent with this opinion.