# In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

### NO. 09-15-00054-CR
_____

### NATHAN JOEL NICHOLS JR., Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 252nd District Court**
**Jefferson County, Texas**
**Trial Cause No. 11-12776**

### MEMORANDUM OPINION

A jury found Nathan Joel Nichols Jr. (Nichols) guilty of possession of a prohibited weapon, a third-degree felony. Tex. Penal Code Ann. § 46.05(a) (West Supp. 2014).[1] The jury assessed punishment at five years' imprisonment and recommended the punishment be probated. The trial court suspended the sentence

---

[1] We cite to the current version of the statute as the subsequent amendments do not affect the outcome of this appeal.

and placed Nichols on community supervision for two years. Nichols timely filed an appeal, raising two issues regarding the admission of evidence. We affirm.

FACTUAL BACKGROUND

Nichols was indicted for "intentionally and knowingly possess[ing] a prohibited weapon, namely: a short-barrel firearm," which was alleged to have occurred on or about June 19, 2010. Nichols pleaded "[n]ot guilty." After the jury was selected but prior to trial commencing, Nichols' attorney notified the court of a motion in limine regarding extraneous offenses. He explained that

> . . . [t]his stems from another disturbance in which a shotgun was used, and I think it was another charge the State dismissed, and I'm going to ask for a Motion in Limine in reference to anything about prior offenses. And if he's got to get into it, then we would ask first to approach the bench.

The State responded that it did not anticipate "bringing up that other offense" and the court said "[a]fter opening, we'll take a break, and I'll give you a minute to talk about that."

The State's first witness at trial was Harold Humble (Humble), a former officer with the Beaumont Police Department. Humble testified that he was on patrol on the night of June 19, 2010, and that he received a call about a suspicious vehicle, "a white four-door Buick." He located a vehicle matching the description,

2

which he described as illegally parked in the middle of the street and "far away from the curb." Humble stated that he observed a man standing by the driver's side of the car door. As Humble approached the vehicle, the man began walking away from the vehicle "pretty quickly." Humble detained the man and identified the man as Nathan Nichols.

Humble told the jury that, after he identified Nichols, Humble "checked out the vehicle" and discovered the vehicle was registered to Nichols. Humble explained that he "[h]ad a [wrecker service] come out to tow it and remove it from the roadway." Humble testified that at the time he called the wrecker service, Nichols was not under arrest. The prosecutor asked Humble to explain the standard police procedure used when a vehicle is towed and the following exchange occurred:

> [Humble]: After contacting the wrecker, whenever it gets there, we have to do a routine inventory of the vehicle, write down whatever items are left in the vehicle; just a routine inventory prior to releasing it to the tow truck or wrecker service.
>
> [State's Attorney]: What's the purpose of that? Do you know?
>
> [Humble]: Liability issues so when we have someone that has their vehicle towed and make sure their property's in there whenever we release the vehicle to the wrecker or whatever.

[State's Attorney]: When you inventoried the white Buick, did you locate any unusual items?

[Humble]: Yes, sir. During inventory of the trunk, I observed a sawed-off shotgun in the trunk.

Humble further testified that, according to his report, "the barrel was 14 and three-quarters inches long." According to Humble, possession of such a weapon was prohibited under the Texas Penal Code. According to Humble, after the discovery of the weapon, he arrested Nichols.

Humble then identified the weapon marked as State's Exhibit 1 to be the weapon recovered from the trunk of Nichols' car. Nichols' attorney objected to the admission of the gun into evidence on the basis that a proper foundation had not been laid and that the State had not established "that it's a firearm, a working firearm or comes within one of the exceptions[.]" The court overruled Nichols' objection and admitted the weapon into evidence. The State continued its examination of Humble:

[State's Attorney]: What led you to believe that this weapon was in his possession?

[Humble]: From my original observation, it appeared that he was exiting from the vehicle as I spotted it. He was in the immediate area of the vehicle, which also returned to him. So, I believe that the contents of the vehicle belonged to him, as well.

4

[State's Attorney]: All right. Nobody else was present?

[Humble]: No, sir.

[State's Attorney]: Okay.

Humble also testified that he did not activate the video camera on his police car that night.

On cross-examination, the defense attorney asked whether the call regarding the suspicious vehicle included "a couple other suspicious individuals also besides Mr. Nichols[.]" Humble said no and explained that there were two separate calls, and that the call about "a suspicious vehicle parked in an intersection[]" did not give a description of a person who was driving that car. Humble explained that when he came upon the vehicle, he asked the man, whom he later identified as Nichols, to come talk to him, and that Nichols stopped, came to him, and talked with him. Humble testified that he believed he asked Nichols for his driver's license at that time and then advised Nichols that his car was not parked legally. The defense attorney continued to question Humble as follows:

[Defense attorney]: Did you place him under arrest?

[Humble]: Not at that time, no, sir.

[Defense attorney]: But you called a wrecker?

5

[Humble]: Yes, sir.

[Defense attorney]: Do you usually call wreckers when there are illegally parked vehicles, and assuming he was the driver, the driver standing there, do you usually call wreckers to go tow the car?

[Humble]: No. The driver was no longer standing by the vehicle.

[Defense attorney]: He was standing by you then; right?

[Humble]: Mm-mm. At this time, yes, sir.

[Defense attorney]: Well, how far away were you from the parked vehicle?

[Humble]: I'm not totally sure on the feet, but --

[Defense attorney]: Pretty close?

[Humble]: -- a couple car lengths away probably.

[Defense attorney]: Pretty close?

[Humble]: Close enough, yes, sir.

[Defense attorney]: Well, did you give him a traffic ticket for illegal parking?

[Humble]: No, sir.

[Defense attorney]: Did you place him under arrest before you called the vehicle -- before you called the tow operator?

[Humble]: No, sir.

[Defense attorney]: Did you run his name to see whether or not he had any warrants?

[Humble]: Yes, sir.

[Defense attorney]: Did he have any outstanding warrants?

[Humble]: No, sir, not that I recall.

[Defense attorney]: And you made the determination to tow the vehicle?

[Humble]: Yes, sir.

[Defense attorney]: Mr. Nichols didn't try to run from you?

[Humble]: No, sir.

[Defense attorney]: There were no other people in the vehicle that you know of?

[Humble]: No.

[Defense attorney]: Or you didn't discover anybody else?

[Humble]: No, sir.

After this exchange, Nichols' attorney said "At this time, Your Honor, I have a motion outside the presence of the jury." After the jury exited, Nichols' attorney made an oral motion to suppress. He argued that Officer Humble

> . . . had no probable cause to believe that there was anything illegal in the vehicle. There is evidence that Nichols had done nothing wrong. He was not in custody. There were no warrants, he did not flee, and that he lacked probable cause to detain Mr. Nichols at the time when it should have been, at the most, a traffic ticket but made the decision to tow the vehicle, which would indicate to this person, and also hopefully to the Court that he was not free to leave at the time because a tow truck operator was called, as a decision by law enforcement at that time was he could not leave. He was not placed under arrest. No ticket was issued at the time. So, we believe that it's a violation of Mr. Nichols's constitutional rights and that this State's Exhibit No. 1 should be suppressed.

The State responded as follows:

> . . . [Officer Humble] had been called out for this suspicious vehicle with four males, one of whom was identified by the original caller as Nate. Nathan Nichols. He finds somebody with that vehicle that matches Nate. He can develop probable cause through his investigation. He could have written a ticket for the illegally parked vehicle. He can have it towed for being illegally parked, which he exercised that discretion. He did not arrest him at that time. He didn't write him a ticket. He had the car towed. Happened to find contraband in the trunk, which is why we're here today. But when he found -- when he located the vehicle with Nathan Nichols standing next to it, he knew that there was a suspect from an earlier -- I believe a burglary or deadly conduct named Nate driving that vehicle. So, he has all the reasonable suspicion in the world to do what he did.

8

The trial court overruled the motion to suppress stating "I think the problem, [Defense attorney], is that by keeping out some of the evidence that you've asked to keep out you're then trying to suppress some evidence based on that."

The State then argued that defense counsel had "crossed the line on his Motion in Limine[]" when he asked Humble about how many potential suspects were involved in the original call. The court responded that both attorneys had been "very careful" concerning this subject and that

> . . . I'm not going to say that the door's been open, but I think that was very close to opening the door. So, I would be very careful, [Defense attorney], when you're questioning about the other suspects because I think that's getting close. But at this time, I'm not going to rule that that door has been open. So, the Motion in Limine is still in effect.

When cross-examination of Humble continued, Humble testified that he found no other contraband in the vehicle and no papers identifying Nichols as the owner of the vehicle. He also agreed that, in making an inventory, he would write any contents down on a list so he could log it into property and that prior to taking possession of a vehicle, the tow truck driver acknowledges the items that are in the vehicle. Humble testified that after he retrieved the weapon and determined it was a prohibited weapon, he placed Nichols in custody and transported him to jail.

Defense counsel asked whether Nichols was ever out of Humble's custody from the time Humble stopped until the time Humble brought Nichols to jail, and Humble replied that "I believe after he was taken into custody, we went to the police department . . . where he met with detectives. . . [a]nd then to jail[.]"

Detective Molfino (Molfino), an investigator for the district attorney's office also testified. Molfino explained that in his career in law enforcement, he had been deputized to work on investigations with the Bureau of Alcohol, Tobacco, Firearms and Explosives and the U.S. Marshal's Task Force and that he had received federal law enforcement training for firearms and explosives cases. Molfino testified that he had examined the weapon found in Nichols' vehicle and based on his experience, he believed the barrel of the weapon had been cut down and that, as a short-barrel firearm that was not a curio or relic, it was a prohibited weapon. No other witnesses testified. After receiving the charge and deliberating, the jury returned a verdict of "guilty[.]"

ISSUES ON APPEAL

Nichols raises two issues on appeal. First, he argues that the trial court erred by denying his motion to suppress because the vehicle was "improperly impounded" when the inventory search was performed. Nichols contends that when the search was performed, Nichols was "standing right there" and was not

under arrest, and there were reasonable alternatives to impoundment. In his second issue, Nichols argues that the search performed on the trunk of his vehicle exceeded the scope afforded under the federal and state constitutions. He contends that the record gives no evidence "as to how Humble believed that he was authorized to enter the trunk" of Nichols' vehicle. As to both of these issues, Nichols argues that because the search of the trunk of his vehicle was unconstitutional, the weapon found was inadmissible because it was "not the fruit of a legal search[.]"

In response, the State first argues that Nichols has waived his challenges because (1) Nichols' oral motion to suppress was untimely, as it was made after the weapon was already admitted into evidence, and (2) Nichols' argument on appeal does not comport with the objection he made at trial. As to the impoundment of Nichols' vehicle, the State responds that the nature of Nichols' traffic violation justified having the vehicle towed "to remove it as a traffic obstruction." The State "acknowledges the lack [of] evidence regarding police departmental policy regarding the scope of an inventory search." However the State argues that Humble testified that inventory searches are justified and are conducted "because of liability issues."

PRESERVATION OF ERROR

As a threshold issue, we must determine whether appellant has preserved his complaints for appellate review. *See, e.g.*, *Moore v. State*, 295 S.W.3d 329, 333 (Tex. Crim. App. 2009) ("Preservation of error is a systemic requirement of every appeal.") (citing Tex. R. App. P. 33.1). To preserve error, the record must show that appellant made a timely request, objection, or motion, and that the trial court ruled on it. Tex. R. App. P. 33.1(a); *Garza v. State*, 126 S.W.3d 79, 81-82 (Tex. Crim. App. 2004) (citing *Nelson v. State*, 626 S.W.2d. 535, 536 (Tex. Crim. App. 1981)). There are two main reasons we require timely and specific objections: (1) to inform the judge of the basis of the objection and give her the chance to make a ruling on it, and (2) to give opposing counsel the chance to remove the objection or provide other testimony. *Zillender v. State*, 557 S.W.2d 515, 517 (Tex. Crim. App. 1977). By affording the judge an opportunity to rule on an objection, she is able to decide whether the evidence is admissible. *Garza*, 126 S.W.3d at 82. If the judge decides the evidence is inadmissible, the jury is shielded from hearing it. *Id.*

Because an objection to the admissibility of evidence is a specialized objection, a motion to suppress must meet all requirements: it must be timely and sufficiently specific to inform the trial court of the complaint. *Krause v. State*, 243 S.W.3d 95, 102 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). To be timely, a

motion to suppress must be presented before the evidence is admitted into evidence and before a witness gives substantial testimony about it. *See Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014) (to preserve error, an objection must be made "at the earliest possible opportunity[]"); *Cannon v. State*, 691 S.W.2d 664, 674 (Tex. Crim. App. 1985) (error waived where no objection was made when the evidence was offered into evidence); Nelson, 626 S.W.2d at 535-56 (where written motions to suppress "lay dormant[]" without a hearing or decision, an oral motion to suppress made after evidence was admitted and after the State rested was untimely and did not preserve error for appeal); *Marini v. State*, 593 S.W.2d 709, 714 (Tex. Crim. App. [Panel Op.] 1980) (error waived for failure to object at the time police officer testified because "an objection must be urged at the earliest opportunity[]"). Citing to *Cardenas v. State*, 857 S.W.2d 707 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd), Nichols' argues on appeal that "a Motion to Suppress made as late as the end of trial has adequately preserved error." We find *Cardenas* inapposite as *Cardenas* concerned a bench trial, wherein it is not necessary to shield the jury from hearing objectionable or inadmissible evidence. *See Garza*, 126 S.W.3d at 82; *Cardenas,* 857 S.W.2d at 708 ("This is an appeal from bench trial convictions[.]").

13

Nichols was indicted in October of 2011, and his jury trial was in January 2015. The appellate record includes no evidence that Nichols made any motion to suppress, written or oral, at any time before trial. In this case, Nichols did not urge his oral motion to suppress based on the alleged unlawful search or seizure until after Humble testified about the circumstances surrounding appellant's arrest and after the weapon seized was admitted into evidence. As a result, Nichols failed to preserve his complaints for appellate review. *See Nelson*, 626 S.W.2d at 535-36; *Sims v. State*, 833 S.W.2d 281, 284 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd).[2] We will not address the merits of issues when the issues have not been preserved for appeal. *Blackshear v. State*, 385 S.W.3d 589, 591 (Tex. Crim. App. 2012). Accordingly, we overrule both of Nichols' issues and affirm the trial court.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on August 6, 2015
Opinion Delivered November 25, 2015
Do Not Publish

Before McKeithen, C.J., Kreger and Johnson, JJ.

---

[2] Nichols does not argue that the errors of which he complains are fundamental or that he should be allowed to raise them for the first time on appeal.