ACCEPTED
14-15-00155-CR
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
7/7/2015 2:17:45 PM
CHRISTOPHER PRINE
CLERK

NO. 14-15-00155-CR
NO. 14-15-00156-CR
NO. 14-15-00157-CR
NO. 14-15-00158-CR

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS

7/7/2015 2:17:45 PM

CHRISTOPHER A. PRINE
Clerk

IN THE COURT OF APPEALS

FOURTEENTH DISTRICT

HOUSTON, TEXAS

NO. 1385626
NO. 1385627

IN THE TRIAL COURT

179TH JUDICIAL DISTRICT

HARRIS COUNTY, TEXAS

| | | |
|---|---|---|
| LARRY TORRES | § | APPELLANT |
| VS. | § | |
| THE STATE OF TEXAS | § | APPELLEE |

BRIEF FOR APPELLANT

ALLEN C. ISBELL
2016 Main St., Suite 110
Houston, Texas 77002
713/236-1000
Fax: 713/236-1809
STATE BAR NO. 10431500
Email: allenisbell@sbcglobal.net
COUNSEL ON APPEAL

# NAMES AND ADDRESSES OF ALL PARTIES
# AT THE TRIAL COURT'S FINAL JUDGMENT

<u>Trial Judge</u>

Honorable Kristin M. Guiney, Judge Presiding
179th District Court
1201 Franklin, 18th Fl., Houston, Texas 77002

<u>Appellant/Defendant</u>

Mr. Larry Torres
#00898315
Polunsky Unit
3872 FM 350 S., Livingston, Texas 77351

<u>Appellant's Counsel</u>

Mr. Allen C. Isbell - Counsel on Appeal
2016 Main St., Suite 110, Houston, Texas 77002

Mr. Jimmy J. Ortiz, Jr. - Counsel at Trial
1924 Portsmouth St., Houston, Texas 77002

<u>Attorneys for the State of Texas</u>

Mr. Alan Curry - Assistant District Attorney on Appeal
1201 Franklin, Ste. 600, Houston, Texas 77002

Ms. Andrea Koch - Assistant District Attorney at Trial
Ms. Kathy Kahle - Assistant District Attorney at Trial
1201 Franklin, 6th Fl., Houston, Texas 77002

# TABLE OF CONTENTS

**PAGE**

Names and Addresses of All Parties at the Trial Court's Final Judgment
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

Statement Regarding Oral Argument . . . . . . . . . . . . . . . . . . . . . vii

Statement of the Nature of the Case . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts To Provide the Court The Context of This Appeal
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Point of Error Number One**
THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING
APPELLANT'S MOTION TO SUPPRESS THE TESTIMONY OF
DEPUTY SALAZAR REGARDING AN ORAL CONSENT TO SEARCH
THE VEHICLE BECAUSE IT WAS FRUIT  OF AN ILLEGAL
DETENTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

**Point of Error Number Two**
THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING
APPELLANT'S MOTION TO SUPPRESS THE EVIDENCE SEIZED
FROM THE LOCKED CONTAINER IN THE TRUNK OF HIS VEHICLE
BECAUSE IT WAS FRUIT OF AN ILLEGAL DETENTION. . . . . . . . 7

**Point of Error Number Three**
THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING
APPELLANT'S MOTION TO SUPPRESS THE TESTIMONY OF
DEPUTY BARRON AS TO APPELLANT'S ACTIONS WHEN THE
TRUNK OF HIS CAR WAS OPENED BECAUSE THIS TESTIMONY
WAS THE FRUIT OF AN ILLEGAL DETENTION. . . . . . . . . . . . . . 7

Statement of Facts Points of Error Numbers One Through Three

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Summary of the Argument Points of Error One Through Three
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Argument and Authorities Points of Error One Through Three
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**Point of Error Number Four**
**THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING APPELLANT'S MOTION TO SUPPRESS BECAUSE THE RECORD DOES NOT SUPPORT THE TRIAL COURT'S FINDING OF FACT THAT OFFICER SALAZAR HAD PROBABLE CAUSE TO ARREST APPELLANT FOR PUBLIC INTOXICATION.** . . . . . . . . . . . . . . . 11

Statement of Facts Point of Error Number Four . . . . . . . . . . . . . . 11

Summary of the Argument Point of Error Number Four
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Argument and Authorities Point of Error Number Four
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**Point of Error Number Five**
**THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING APPELLANT'S MOTION TO SUPPRESS THE EVIDENCE BECAUSE THE STATE FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT THE "CONSENT" OBTAINED BY DEPUTY SALAZAR WAS VOLUNTARY UNDER THE TOTALITY OF THE CIRCUMSTANCES.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Statement of Facts Point of Error Number Five . . . . . . . . . . . . . . 19

Summary of the Argument Point of Error Number Five . . . . . . . . . . 23

Argument and Authorities Point of Error Number Five . . . . . . . . . . 24

Conclusion and Prayer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

# INDEX OF AUTHORITIES

**<u>CASES</u>**                                                                    **<u>PAGE</u>**

*Amador v. State*, 221 S.W.3d 666, 673 (Tex.Crim.App. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Campbell v. State,* 325 S.W.3d 223 (Tex. App. Fort Worth 2010, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Cardenas v. State,* 857 S.W.2d 707, 710 (Tex.App. Houston [14th Dist] 1993, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Carmouche v. State,* 10 S.W.3d 323, 327-328 (Tex.Crim.App. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Chilman v. State*, 22 S.W.3d 50 (Tex.App. Houston [14th Dist.] 2000, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Davis v. State*, 313 S.W.3d 317, 336-339 (Tex.Crim.App. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Dickey v. State*, 552 S.W.2d 467 (Tex.Crim.App. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Ibarra v. State*, 953 S.W.2d 242, 245 (Tex.Crim.App. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Kolb v. State*, 532 S.W.2d 87, 89 n.1 (Tex.Crim.App. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*McKenna v. State*, 780 S.W.2d, 797,799 (Tex.Crim.App. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Meekins v. State*, 340 S.W.3d 454, 458-459 (Tex.Crim.App. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Oursbourn v. State*, 259 S.W.3rd 159 (Tex.Crim.App. 2008)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Paolilla v. State*, 342 S.W.3d 783, 792-793 (Tex.App. Houston [14th Dist.]
2011, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Simpson v. State*, 886 S.W.2d 449 (Tex.App. Houston [1st Dist.] 1994, pet.
ref'd . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*State v. Kelly*, 204 S.W.3d 808, 818-819 (Tex.Crim.App. 2006)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Wade v. State*, 422 S.W.3d 661 (Tex.Crim.App. 2013)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-11

*Wiede v. State*, 214 S.W.3d 17, 24 (Tex.Crim.App. 2007)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## STATUTES

*Texas Code of Criminal Procedure*, Art. 38.22, Sec. 6. . . . . . . . . . . . . . . 25

*Texas Code of Criminal Procedure*, Art. 38.23(a) . . . . . . . . . . . . . . . . . . 24

*Texas Penal Code*, Sec. 42.08(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## CONSTITUTIONS

*Texas Constitution*, Art. I, Sec. 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States Constitution*, Fourth Amendment . . . . . . . . . . . . . . . . . . . 24

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is waived.

**TO THE HONORABLE COURT OF APPEALS:**

COMES NOW LARRY TORRES, appellant, by and through his appointed attorney of record, ALLEN C. ISBELL, and files this Brief in support of his prayer for reversal of his conviction.

## Statement of the Nature of the Case

This is an appeal arising from a conviction for Felon in Possession of a Weapon in Cause No. 1385626 and Possession with Intent to Deliver a Controlled Substance in Cause No. 1385627, in the 179th District Court of Harris County, Texas, the Honorable Kristin M. Guiney, Judge Presiding. The judge found appellant guilty. The judge sentenced appellant to fifteen (15) years confinement in Cause No. 1385626 and twenty-five years confinement in Cause No. 1385627, both sentences to run concurrently, in the Texas Department of Criminal Justice, Institutional Division. No Motion for New Trial was filed. Appellant gave written Notice of Appeal on February 12, 2015.

## Statement of Facts
### To Provide the Court The Context of This Appeal

A person called the police about a vehicle parked in front of the residence at 16214 Sky Blue Lane, Houston, Harris County, Texas. Harris County Sheriff Deputy Raymond Salazar was the first officer to arrive. He arrived at 6:25 a.m. Harris County Sheriff Deputy Davis arrived at 6:28 a.m.

and Harris County Sheriff Deputy Barron arrived at 6:38 a.m. (R.R. 2, 28).

Deputy Salazar approached the parked vehicle. The vehicle's engine was not running; the keys were not in the ignition. The driver's door was ajar about a foot. Appellant, was laying back in the driver's seat asleep. His foot was on the door frame crease. Within minutes Deputy Salazar and the other deputies discovered that appellant was sleeping in his own vehicle, parked in front of his own residence, and that the parked vehicle was registered to appellant at that address. Deputy Barron confirmed that appellant resided at that address (R.R. 2, 10, 23,28-29,69).

Deputy Salazar opened the driver's door and shook appellant's leg. When appellant did not wake up, Deputy Salazar shook the leg harder. Appellant started opening his eyes. Appellant was very groggy. Then, Deputy Salazar and Deputy Davis shook appellant a bit more. Finally, appellant woke up, still very groggy. Appellant shifted in the driver's seat so his feet were sticking out the driver's side doorway (R.R. 2, 11-12).

Deputy Salazar questioned appellant. Appellant was only somewhat responsive to the questions, meaning that appellant was groggy and answered the questions slowly. Among the questions, Deputy Salazar asked whether there was anything illegal in the vehicle. Appellant answered, "No."

Deputy Salazar noticed that appellant was looking down towards the driver's door pocket area as the deputy questioned him about anything illegal being in the vehicle. Deputy Salazar found this suspicious. He had a "hunch" that appellant had something illegal in the driver's door pocket (R.R. 2, 12-14,46-47).

Deputy Salazar told appellant to get out of appellant's vehicle. Deputy Salazar admitted that at the time he removed appellant from the vehicle, he had not seen anything illegal going on, and he had seen nothing illegal in the vehicle. Deputy Salazar testified that appellant was not free to leave after he detained him by removing appellant from the vehicle (R.R. 2, 48,54).

Deputy Salazar did not ask appellant for his consent to search the vehicle until he had detained appellant by removing him from the vehicle. Deputy Salazar claims he asked appellant for this consent three times, and that each time appellant said, "Yes." Deputy Salazar took appellant to the rear of the vehicle and told him to stand near the rear tire. Appellant complied with Deputy Salazar's order, but he kept falling asleep - even while standing up (R.R. 2, 40). Deputy Salazar searched the driver side door pocket, where he had seen appellant looking. But, nothing illegal was there. The deputies searched the interior of the vehicle front and back. The deputies did not

discover anything illegal (R.R. 2, 14, 16).

Deputy Barron arrived after the interior of the vehicle had been searched. Deputy Barron went up to appellant, patted him down again. During this pat down, Deputy Barron removed a set of keys from appellant's pocket. He handcuffed appellant's hands behind his back because appellant would not relax (R.R. 2, 17, 19). Meanwhile, Deputy Salazar had opened the trunk. Inside the trunk was small hand-carried safe or lockbox. A key from appellant's pocket fit the lockbox. Opening the locked box, the deputies discovered a handgun and controlled substances in the box (R.R. 2, 22, 67; State's Exhibits 3 and 4). Deputy Barron placed appellant in the his patrol vehicle. Immediately, appellant fell asleep in the police vehicle. Appellant slept all the way from the scene to the police station (R.R. 2, 67-69, 91-92,109).

Deputy Barron went to the residence and got a written consent to search the residence at 16214 Sky Blue Lane, signed by a person in the residence. This written consent to search is a form that every Harris County Deputy carries in the trunk of his patrol car. The deputies searched the residence, but they discovered nothing illegal inside the residence (R.R. 2, 69, 96-98; Defense Exhibit 3).

Appellant testified that he did not remember giving consent to search his vehicle because his memory was affected by severe sleep deprivation and his need for sleep. However, he says that regardless of his physical or mental condition, he would not have given consent to search the vehicle because he knew what he had in the locked box inside the trunk of the vehicle. He knew that what he had in that locked box could get him into serious trouble (R.R. 2, 107, 120-121). This is not appellant's "first rodeo."

Appellant's counsel asked appellant about his mental condition at the time Deputy Salazar asked him for consent to search his vehicle, and whether that mental condition affected his understanding of what Deputy Salazar was asking him. Appellant replied:

> A.  I hadn't slept in five days. I was out of it.
>
> Q.  And so, what happened next as you're on the trunk and they're going through the car?
>
> A.  When they pulled me off the trunk, they started going through the trunk. I'm, like, what are you guys doing, you know? You guys need a warrant to get in there. And I came to only because, granted, you know, I know what I got in the trunk, you know. And I carry a lockbox for a reason and that's to make sure if I ever got found in a situation like this, that they wouldn't get in it without a warrant. I'm not going to let them just take me like that. They say they got seasoned veterans as officers; well, you know, I'm 46 years old and I've been in the game myself, you know, for a while (R.R. 2, 108).

On February 12, 2015, the trial court overruled appellant's motion to suppress and made the following findings of fact:

> The Court will make the following findings: As Officer Salazar approached the car, the car was off but in the street and regardless of what Officer Salazar thought was going on, Mr. Torres could have been arrested for public intoxication. Officer Salazar and his accompanying deputies asked if they could search the car; and while the defendant testified I believe truthfully, by his own admission the defendant did not recall whether he had given consent or not.
>
> The Court finds Officer Salazar and Officer Barron's testimony to be credible and reliable (R.R. 3, 4).

Immediately, appellant entered a plea of guilty in Cause No. 1,385,627 (possession of controlled substance, namely, METHAMPHETAMINE, for a sentence of 25 years TDC, with the right to appeal the pre-trial motion to suppress (C.R., 95-103). Appellant entered a plea of guilty in Cause No. 1,385,626 (felon in possession of a firearm) for a sentence of 15 years TDC, with the right to appeal the pre-trial motion to suppress (C.R., 96-104).

Appellant gave notice of appeal of the trial court's ruling in each case and of his conviction in each case. *McKenna v. State*, 780 S.W.2d, 797,799 (Tex.Crim.App. 1989).

**Point of Error Number One**

**THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING**

**APPELLANT'S MOTION TO SUPPRESS THE TESTIMONY OF DEPUTY SALAZAR REGARDING AN ORAL CONSENT TO SEARCH THE VEHICLE BECAUSE IT WAS FRUIT OF AN ILLEGAL DETENTION.**

### Point of Error Number Two

**THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING APPELLANT'S MOTION TO SUPPRESS THE EVIDENCE SEIZED FROM THE LOCKED CONTAINER IN THE TRUNK OF HIS VEHICLE BECAUSE IT WAS FRUIT OF AN ILLEGAL DETENTION.**

### Point of Error Number Three

**THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING APPELLANT'S MOTION TO SUPPRESS THE TESTIMONY OF DEPUTY BARRON AS TO APPELLANT'S ACTIONS WHEN THE TRUNK OF HIS CAR WAS OPENED BECAUSE THIS TESTIMONY WAS THE FRUIT OF AN ILLEGAL DETENTION.**

### Statement of Facts
### Points of Error Numbers One Through Three

Deputy Salazar testified that he and Deputy Davis got appellant awake enough to sit up in the driver's seat. Appellant's feet were facing out the driver's side doorway. Deputy Salazar questioned him. Among other

questions, Deputy Salazar asked appellant several times if there was anything illegal in the vehicle. While Deputy Salazar asked questions, appellant looked in the direction of the front door panel. Deputy Salazar found this "suspicious" (R.R. 2, 13-14, 47-49).

Based on this suspicion alone, Deputy Salazar ordered appellant to get out of the vehicle. Appellant complied with this command. Then, Deputy Davis patted appellant down. Appellant was detained. He was not free to leave (R.R. 2, 54). At the time Deputy Salazar detained appellant, he had not observed anything illegal occurring. He did not have any evidence that anything illegal was in the vehicle (R.R. 2, 48).

## Summary of the Argument
## Points of Error One Through Three

At the time Deputy Salazar detained appellant, he did not have probable cause for that detention. He had not observed anything illegal occurring; he had not seen anything illegal in appellant's vehicle. The physical evidence and the verbal evidence used against appellant came after the illegal detention. They were the "fruits of the poisonous tree." That evidence should have been suppressed.

**Argument and Authorities**
**Points of Error One Through Three**

In *Wade v. State*, 422 S.W.3d 661 (Tex.Crim.App. 2013), the Court of Criminal Appeals held clearly that a police officer's "hunch," even when based on prior experience or training, is not sufficient to prove probable cause for a detention. The circumstances in *Wade* are very similar to those in the present case. In *Wade*, two game wardens approached a vehicle parked in a public boat ramp to see if everything was all right. The game wardens questioned the driver of the vehicle, who said he was eating his lunch. The driver produced his identification. One game warden said he was suspicious of some criminal activity because: (1) the truck was parked on a boat ramp, but it did not have any fishing equipment and the truck was not pulling a boat; (2) the driver said that he lived nearby, but his license showed that he lived fifteen miles from the boat dock; (3) the game warden had not seen evidence of a lunch inside the truck's cab; and (4) the driver seemed overly nervous when the game wardens asked if he had any weapons or contraband in the truck.

The game wardens ordered the driver out of the truck and patted him down for weapons. After the pat-down, the game wardens asked again if he had anything illegal in the truck. Then, the driver admitted that there was a pipe which tests proved that it contained a small amount of

methamphetamine.  The game wardens arrested the driver.  At trial, the trial court denied his motion to suppress the search because of an illegal detention.  The Court of Appeals upheld the trial court's ruling.

The Court of Criminal Appeals reversed.  The Court held that any consensual encounter between the driver and the game wardens escalated into an illegal detention when the driver was ordered out of the truck for a pat-down search.  For a detention to be legal, the law enforcement officer had to have observed things that were sufficiently distinguishable from that of an innocent person in the same circumstances as to set the suspect apart from an innocent person, clearly, if not conclusively.  The Court of Criminal Appeals held that none of the circumstances preceding the game warden's order for the driver to get out of the truck, even when viewed in the light most favorable to the trial court's ruling, justified a reasonable suspicious that the driver was involved in any criminal conduct.  Because the detention was illegal, the driver's statement about having the pipe was "fruit of the poisonous tree" and it could not provide probable cause for the warrantless search of the vehicle.

The only difference between the *Wade v. State*, supra, decision and the instant case is that the "fruit of the poisonous tree" is appellant's alleged "consent" to search the vehicle, rather than a confession of a crime.  The

"consent" in the instant case, similar to the "confession" in *Wade,* came after an illegal detention.

Once Deputy Salazar learned that appellant lived at the residence where the vehicle was parked, that the vehicle was registered to appellant at that residence, and that he did not see any sign of criminal activity, the detention of appellant based on a mere "suspicion" was not reasonable. Because the detention was illegal, the items recovered from the locked container in the trunk of the vehicle, all statements by appellant after he was ordered out of his vehicle, and all actions by the appellant after he was detained illegally should have been suppressed as "fruits of the poisonous tree."

**Point of Error Number Four**

**THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING APPELLANT'S MOTION TO SUPPRESS BECAUSE THE RECORD DOES NOT SUPPORT THE TRIAL COURT'S FINDING OF FACT THAT OFFICER SALAZAR HAD PROBABLE CAUSE TO ARREST APPELLANT FOR PUBLIC INTOXICATION.**

**Statement of Facts**
**Point of Error Number Four**

Deputy Raymond Salazar was the major investigator in this situation.

He testified that he observed no evidence that drugs or alcohol were involved in the situation. When asked if he had any indication that any offense was being committed or had been committed, Deputy Salazar unequivocally said that there was none.

CROSS-EXAMINATION BY MR. ORTIZ:

     Q.    And so, within a minute or so of you arriving on scene, you have already confirmed with regards to this suspicious vehicle that was reported that this vehicle is registered to the address that it is parked directly in front of, correct?

     A.    Correct.

     Q.    And this vehicle that you ultimately find Larry Torres in was legally parked on the street, correct?

     A.    Yes.

     Q.    In front of the mailbox?

     A.    Yes.

     Q.    And you also agree that - - I believe you also ran his driver's license information on his name, correct?

     A. I did not run it. What this is is Deputy Davis used my car to run him.

     Q.    Okay. But Deputy - -

     A.    But it indicates on the call slip that it ran through mine (R.R. 2, 29-30).

\* \* \* \* \*

Q. So when you arrived on the street, it's actually a cul-de-sac, is that correct?

A. Correct (R.R. 2, 35).

* * * * *

Q. At that point you still haven't - - there's no crime or anything at this point, nothing going on, correct?

A. No crime.

Q. And you indicated that the car was off, engine wasn't running, correct?

A. Correct.

Q. So there's no type of D.W.I. investigation or anything like that correct?

A. Correct.

Q. And so, at this point, I believe you said that you had to shake his leg numerous times, you know, just to get him to wake up; is this correct?

A. Correct.

Q. And that he is real groggy and that you indicated he didn't even know where he was at, correct?

A. Correct.

Q. Now, when you walked up to the vehicle, I mean, you didn't smell any odor of marijuana, correct?

A. Correct.

Q. There was no guns or drugs or drug paraphernalia in plain view anywhere in the car, was there?

A. Correct.

Q. Nothing that would give you the impression that drug possession or anything having to do with drugs is involved in that particular call, is there?

A. In plain view, no.

* * * * *

Q. And you would agree, Deputy Salazar, it's not illegal, it's not a crime to sleep in your car, is it?

A. It's not illegal to sleep in your car, no.

Q. So at this point, you would agree that you verified that Mr. Torres lives at the residence?

A. Yes.

Q. That he has a legal basis to be there, correct?

A. Yes.

Q. And he wasn't committing any crimes in your view, correct?

A. Correct.

Q. There wasn't any type of criminal activity before or when you arrived?

A. Correct.

Q.      Even after you got him out of the car and started to speak to him, still no indication any type of crime had been committed, correct?

A.      Correct (R.R. 2, 36-38).

* * * * *

Q.      But the question, Deputy Salazar, is after you verified that he lives there and that there was no crime being committed in your view or any signs of any crime by looking into the vehicle and even after getting him out, you could have walked him up to the door, knocked on the door, and let him go for the night, correct?

A.      Sure (R.R. 2, 40).

Both Deputy Salazar and Deputy Barron described appellant as very sleepy.

Neither testified that appellant appeared intoxicated (R.R. 2, 11,14-15, 40-43,

61, 67, 91-92, 109).

## Summary of the Argument
## Point of Error Number Four

In ruling that appellant's detention was legal, the trial court made this

finding of fact: "Mr. Torres could have been arrested for public intoxication."

This finding is not supported by the testimony.  No witness testified that

appellant's condition was caused by intoxication.  The deputies testified that

no crime was being committed in their view and that the deputies did not see

any signs of any crime.  The trial court's finding of fact is not supported by the

testimony.

**Argument and Authorities**
**Point of Error Number Four**

A trial court's ruling on a motion to suppress evidence is reviewed under a bifurcated standard. The appellate court will give almost total deference to the trial court's rulings on questions of historical fact and on its application-of-law-to-fact questions that turn on an evaluation of the credibility and demeanor of the witnesses at the hearing. But when the application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, the appellate court reviews the trial court's rulings on those questions *de novo*. *Amador v. State*, 221 S.W.3d 666, 673 (Tex.Crim.App. 2007).

When the trial court has made explicit findings of fact, a review of the record must be made in the light most favorable to the trial court's ruling to determine whether the record supports those fact findings. The appellate court then reviews the trial court's legal ruling *de novo,* unless the trial court's explicit fact findings are supported by the record and are dispositive of the legal ruling. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex.Crim.App. 2007); *State v. Kelly*, 204 S.W.3d 808, 818-819 (Tex.Crim.App. 2006).

The record does not support the finding by the trial court that the Deputies could have arrested appellant for public intoxication. Public Intoxication is a criminal offense set forth in *Texas Penal Code*, Sec. 42.08(a). An individual commits the offense if he appears in a public place under the influence of alcohol or any other substance, to the degree that the individual may endanger himself or another. A warrantless arrest for public intoxication is valid only if the arresting officer has reason to believe that the suspect is not merely intoxicated but intoxicated to the degree that he may endanger himself or another.

The undisputed testimony from the arresting deputies themselves is that they did not observe evidence that appellant was under the influence of alcohol or any other substance. Deputy Salazar testified that he did not observe any evidence that drugs or alcohol were involved in this situation. Deputy Salazar testified, unequivocally, that there was no indication that any offense was being committed or had been committed.

Even if appellant's sleepiness could have been considered an indication of intoxication, mistakenly, the physical manifestations of alcohol or drug consumption are not sufficient to constitute the offense of public intoxication. There must be proof of a potential danger at that time. See and compare:

*Chilman v. State*, 22 S.W.3d 50 (Tex.App. Houston [14ᵗʰ Dist.] 2000, pet.

ref'd)(A car stopped in an isolated place at 2 a.m. The defendant found sitting

in the driver's seat with the motor running. He had bloodshot eyes, slurred

speech and he smelled of alcohol. It was reasonable to conclude that he was

intoxicated and he was going to drive in that condition, thereby posing a risk

to himself or others); *Simpson v. State*, 886 S.W.2d 449 (Tex.App. Houston

[1ˢᵗ Dist.] 1994, pet. ref'd)(Defendant arguing violently in the middle of a street.

He displayed signs of intoxication: bloodshot eyes, slurred speech, and he

smelled strongly of alcohol. It was reasonable to assume that moving

vehicles in the street posed a danger to appellant because of his state of

intoxication); *Campbell v. State,* 325 S.W.3d 223 (Tex. App. Fort Worth 2010,

no pet.)(Officer received a dispatch about a possible drunk driver. He found

the described vehicle stopped on a residential street. The defendant smelled

of alcohol and was asleep or passed out. The keys were still in the ignition,

and upon awakening the defendant immediately reached for the keys to start

the car. His obvious intent to drive in that condition created a reasonable

conclusion that he posed a danger to himself or others); *Dickey v. State*, 552

S.W.2d 467 (Tex.Crim.App. 1977)(Vehicle found parked in front of a lounge

in the early morning hours. The defendant was intoxicated and passed out in

the front seat. Because it was possible that he could have come to and decided to drive home in that condition, it was reasonable to conclude that he posed a danger to himself or others). Certainly, the testimony in the case before the Court does not support the claim that appellant was intoxicated to the degree that he may endanger himself or another, which is an element of Public Intoxication.

The testimony does not support the trial court's ruling that Deputy Salazar had probable cause to arrest appellant for the offense of Public Intoxication. Appellant's detention was without probable cause. The evidence seized as a result of appellant's illegal detention and arrest should have been suppressed.

## Point of Error Number Five

**THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING APPELLANT'S MOTION TO SUPPRESS THE EVIDENCE BECAUSE THE STATE FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT THE "CONSENT" OBTAINED BY DEPUTY SALAZAR WAS VOLUNTARY UNDER THE TOTALITY OF THE CIRCUMSTANCES.**

### Statement of Facts
### Point of Error Number Five

When Deputy Raymond Salazar arrived at 6:25 a.m., appellant was

asleep in his own vehicle, parked in front of his own residence. Deputy Salazar shook appellant's leg until appellant opened his eyes, but appellant fell back asleep immediately. After Deputy Davis arrived, he and Deputy Salazar shook appellant until appellant woke up. Even then, appellant was very groggy. When Deputy Salazar asked appellant what was going on, appellant sat up to answer his question, but appellant remained very stuporous (R.R. 2, 11-13). The deputies ordered appellant out of his vehicle. The deputies took appellant to the rear of the vehicle and told him to stand near the rear tire. Appellant complied, but he kept falling asleep, even while standing up (R.R. 2, 14-15, 40-41). Deputy Barron said that appellant was very sleepy when he arrived at 6:38 a.m. (R.R. 2, 61). The deputies had a difficult time keeping appellant from falling asleep during the entire time he was in their presence. After the deputies discovered the firearm and the contraband in the locked safe inside the trunk, Deputy Barron placed appellant in his patrol vehicle. Immediately, appellant fell asleep in the police vehicle. Appellant slept all the way from the scene to the police station.

Appellant testified that he had been without sleep for four to five days before the early morning hours of April 27, 2013. During some of that time, he had taken methamphetamine which makes sleep impossible. On the day

c:\appeals\torres\brief                                                                                      20

before he was arrested, appellant had been drinking and partying with a girlfriend. As he drove to his home, he started falling asleep at stop lights. He managed to drive to his residence at approximately 4:00 a.m. He turned off the engine. He was in the process of sending a text message to his girlfriend before going inside his residence when his "body just shut down" from lack of sleep. He was not drunk; he was not on methamphetamine or speed or any drug. He was just very, very tired (R.R. 2, 102-104,117-118). He remembered being "woke up by the cops," who told him they were there to make sure that he was okay. Appellant did not remember getting out of his vehicle, but he must have because he remembered leaning across the trunk of the vehicle to sleep (R.R. 2, 105-106,112). Appellant remembers seeing the deputies inside his vehicle, but he did not remember giving the officers consent to search his vehicle. Appellant said that when he was pulled off the trunk of his vehicle so Deputy Salazar could open it, he remembered waking up enough to object because he knew what he had in the locked box in the trunk could get him in trouble (R.R. 2, 108-109,112-113).

Deputy Salazar admits that he had "Written Consent to Search" forms available which he could have asked appellant to sign. He admits that it would have taken "only a second" to ask appellant to sign a consent to search

form.    But he did not ask appellant to sign one.  He did not video or record the conversation asking appellant to consent to a search of his automobile. Deputy Salazar agreed that by not recording the consent to search the vehicle by video, audio or in writing, he knew that it would be his word against appellant's word whether appellant gave consent to search the vehicle (R.R. 2, 45, 46).

Deputy Barron got a written consent to search the residence from someone in the residence (R.R. 2, 96-98).  The deputies did not find anything illegal during the search of the residence.

Appellant testified that he did not remember giving consent to search his vehicle because his memory was affected by severe sleep deprivation and his need for sleep.  However, he says that regardless of his physical or mental condition, he would not have given consent to search the vehicle because he knew what he had in the locked box inside the trunk of the vehicle.  And, he knew that what he had in that locked box could get him in serious trouble (R.R. 2, 107, 120-121).  Trial counsel asked appellant about his mental condition at the time Deputy Salazar asked him for consent to search his vehicle, and whether that mental condition affected his understanding of what Deputy Salazar was asking him.  Appellant replied:

A. I hadn't slept in five days. I was out of it.

Q. And so, what happened next as you're on the trunk and they're going through the car?

A. When they pulled me off the trunk, they started going through the trunk. I'm, like, what are you guys doing, you know? You guys need a warrant to get in there. And I came to only because, granted, you know, I know what I got in the trunk, you know. And I carry a lockbox for a reason and that's to make sure if I ever got found in a situation like this, that they wouldn't get in it without a warrant. I'm not going to let them just take me like that. They say they got seasoned veterans as officers; well, you know, I'm 46 years old and I've been in the game myself, you know, for a while (R.R. 2, 108).

**Summary of the Argument**
**Point of Error Number Five**

The State failed to prove by clear and convincing evidence that appellant gave a voluntary consent to search his vehicle. Sometimes, a police officer's oral testimony that a person gave verbal consent to search may constitute "clear and convincing evidence." However, when it would have taken "only a second" to have the citizen sign a Written Consent to Search, a form which every Harris County Sheriff Deputy carries in his patrol vehicle, a shadow is cast on that police officer's testimony. Especially, if the police officer knows that the issue of consent would be resolved by the police officer's testimony versus the accused's testimony.

Additionally, the physical and mental condition of the citizen must be considered as part of the totality of the circumstances in determining whether the State has met its burden to show a voluntary consent by clear and convincing evidence. In this case, the evidence shows clearly that appellant was sleep deprived to the extent that he could not remain awake, except interminably, during this investigation.

**Argument and Authorities**
**Point of Error Number Five**

The *Texas Code of Criminal Procedure*, Art. 38.23(a) prohibits the admission in a criminal case of any evidence seized in violation of any provision of the Constitution or laws of the State of Texas, or the Constitution or laws of the United States of America. The Fourth Amendment to the *United States Constitution* protects citizens against unreasonable searches and seizures. The *Texas Constitution*, Art. I, Sec. 9, provides that a warrantless search or seizure is per se unreasonable, subject to a few well-defined and limited exceptions. Consent to search is an exception to the warrant requirement. *Cardenas v. State,* 857 S.W.2d 707, 710 (Tex.App. Houston [14th Dist] 1993, pet. ref'd)(Citing *Kolb v. State*, 532 S.W.2d 87, 89 n.1 (Tex.Crim.App. 1976)).

A person's consent to search can be communicated to law enforcement orally, in writing, or through circumstantial evidence indicating implied consent. However, the consent must be voluntary to be valid. The trial court must conduct a careful sifting and balancing of the unique facts and circumstances in each case in deciding whether a particular consent to search was voluntary. *Meekins v. State*, 340 S.W.3d 454, 458-459 (Tex.Crim.App. 2011).

Whether a consent to search or an incriminating statement is voluntary is controlled by *Texas Code of Criminal Procedure*, Art. 38.22, Sec. 6. Under Texas law, a claim of involuntariness does not need to be predicated on coercive police activity or whether the person is in custody. *Oursbourn v. State*, 259 S.W.3rd 159 (Tex.Crim.App. 2008) holds that Article 38.22, Sec. 6 protects people from themselves, not only from police overreaching. The focus is whether the accused voluntarily made the statement or gave the consent.

In *Oursbourn*, the Court of Criminal Appeals explains that fact situations can raise a state-law claim of involuntariness, even if they do not raise a federal constitutional claim. The opinion gives several non-exclusive examples where this may be true: (1) the accused was ill and on medication

and that fact may render his confession involuntary; (2) the accused may be intellectually disabled, and that fact may prevent him from "knowingly, intelligently and voluntarily" waiving his rights; (3) the accused may lack the mental capacity to understand his rights; (4) the accused may be intoxicated to the extent that he thought he was signing an accident report, not an inculpatory confession; (5) the accused was confronted by a relative of his murder victim and beaten; (6) the accused was returned to the burglarized premises and questioned by several persons who were armed with weapons. at 160-173. These examples illustrate how the issue of voluntariness can be raised under Texas statutory law. Under Texas law, the State must prove that the consent was voluntary by clear and convincing evidence, not merely by a preponderance of the evidence. *Carmouche v. State,* 10 S.W.3d 323, 327-328 (Tex.Crim.App. 2000); *Ibarra v. State*, 953 S.W.2d 242, 245 (Tex.Crim.App. 1998).

In *Carmouche v. State,* supra at 330, the Court of Criminal Appeals discussed the issue of consent as an exception to the probable cause and warrant requirements of our state and federal constitutions. Consent is not established by showing no more than acquiescence to a claim of lawful authority. The trial court must look at the totality of the circumstances

surrounding the statement of consent to determine whether it was given knowingly and voluntarily.  This includes the characteristics of the accused as well as the details of the interrogation.

There is no conflicting evidence in this case as to appellant's mental and physical condition at the time Deputy Salazar obtained a statement of consent.  Deputy Salazar testified that at the time he requested permission to search the vehicle, appellant was abnormally sleepy to the extent that he kept falling asleep even while standing up.  All the testimony unequivocally shows that appellant was not fully awake at the time Deputy Salazar asked appellant for consent to search the vehicle.  He continued to fall in and out of sleep from shortly after 6:25 a.m., when Deputy Salazar woke him up enough to be able to sit up, and 6:28 a.m. when Deputy Barron arrived.

Although appellant was not under heavy medication that interfered with his wakefulness and mental processes, the same rationale should apply to a state of abnormal sleepiness in determining the issue of voluntariness.  The question is whether the state of appellant's consciousness rendered him incapable of making an informed decision.  This record does not support the trial court's implied finding that the statement of consent obtained by Deputy Salazar was voluntary under the totality of the circumstances.  See and

compare: *Davis v. State*, 313 S.W.3d 317, 336-339 (Tex.Crim.App. 2010)(Evidence showed that the defendant was calm and exhibited a rational understanding of the questioning); *Paolilla v. State*, 342 S.W.3d 783, 792-793 (Tex.App. Houston [14th Dist.] 2011, pet. ref'd)(Evidence showed that the defendant spoke clearly and concisely, was conscious and alert, was oriented to her surroundings, and lucid during questioning).

The instant case is an excellent opportunity for the Court of Appeals to give guidance to trial courts on applying the "clear and convincing standard" to the totality of the evidence. One factor that ought to be considered is whether the law enforcement person could have memorialized the consent to search In writing or by recording or by video, but he did not do so. If the consent is memorialized, it is stronger evidence and is more likely to support a finding that the consent is proven by clear and convincing evidence. In the instant case, Deputy Salazar chose not to memorialize the consent in writing although he said it would have taken only a second to do so. In this same episode, Deputy Deputy Barron memorialized the consent to search the residence by a pre-printed written consent form which deputies carry in the trunks of their police vehicles.

Deputy Salazar chose not to memorialize the consent in writing, knowing that the evidence of consent would only be his testimony at the hearing versus the testimony of the accused. This is not to say a police officer's testimony alone cannot provide clear and convincing evidence that the accused consented to a search. But, a cloud is placed on that testimony when the police officer refuses or neglects to memorialize the consent when it is so easily possible to memorialize it.

It is clear that appellant was coming in and out of consciousness due to sleep deprivation. He kept falling asleep in the presence of the deputies. The deputies could waken him only momentarily. The condition is similar to an ill person who is heavily medicated and comes in and out of sleep. Anything a person says in that condition is suspect as not being a voluntary or knowing consent.

This court should find that the State did not meet its burden of proving a voluntary consent to search by clear and convincing evidence. Deputy Salazar, who said it would have taken only a second to have appellant sign a written consent to search document which is readily available, chose not to take that second. Instead, Deputy Salazar wanted the issue of consent to be decided only by his testimony at a hearing to suppress the evidence.

Neglecting to memorialize a citizen's waiver of a constitutional right, when it may easily be memorialized, casts a shadow on whether the waiver of that constitutional right is proved by clear and convincing evidence. It is clear that appellant was in no physical or mental condition to waive his constitutional rights intelligently or voluntarily because he was sleep deprived.

Considering the totality of the evidence, the State did not prove by clear and convincing evidence that appellant's consent was voluntary. Therefore, the items recovered during the search of appellant's vehicle should have been suppressed.

## Conclusion and Prayer

WHEREFORE, PREMISES CONSIDERED, appellant prays that this Court hold that the trial court abused its discretion in overruling appellant's motion to suppress in each case, and that this Court reverse the conviction in each case, remanding each case to the trial court.

Respectfully submitted,

*/s/ Allen C. Isbell*
ALLEN C. ISBELL, Counsel on Appeal
2016 Main St., Suite 110
Houston, Texas 77002
713/236-1000
Fax: 713/236-1809
STATE BAR NO. 10431500
email: allenisbell@sbcglobal.net

## Certificate of Service

I hereby certify that on this 7th day of July, 2015, a true and correct copy of the foregoing Brief for Appellant has been sent to the District Attorney's Office, Appellate Division, and to Mr. Larry Torres, appellant.

*/s/ Allen C. Isbell*
ALLEN C. ISBELL

## Certificate of Compliance

The undersigned attorney on appeal certifies this brief is computer generated and consists of 7,145 words. Counsel is relying on the word count provided by the Word Perfect computer software used to prepare the brief.

*/s/ Allen C. Isbell*
ALLEN C. ISBELL